IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOSE VALENTE PALACIOS-MENDEZ, ID # 32119-080, | ) ) | |
| Movant, | ) | No. 3:16-CV-1774-D (BH) |
| vs. | ) | No. 3:07-CR-097-D (1) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | Referred to U.S. Magistrate Judge |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

By *Special Order 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the *Motion Under 28 U.S.C. § 2255, to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* should be **GRANTED**, the sentence should be vacated, and the movant should be re-sentenced.

### I.  BACKGROUND

Jose Valente Palacios-Mendez (Movant), a federal prisoner, pleaded guilty to unlawful possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), & 924(e)(1). (*See* 3:07-CR-097-D (1), doc. 21.)[1] The United States Probation Office (USPO) filed a Presentence Report (PSR) that applied the 2006 United States Sentencing Guidelines Manual (USSG). (*See* doc. 37 at 6, ¶ 13.) The PSR found that Movant was an armed career criminal, subject to an enhanced sentence under § 924(e), because of his prior felony convictions for a possession with intent to deliver cocaine, assault with a deadly weapon, and voluntary manslaughter. (*See id.* at 2-3, ¶¶ 7, 14.)

The Court adopted the PSR and sentenced Movant to 146 months' imprisonment with a 5-

---

[1] Unless otherwise indicated, all subsequent document numbers refer to the docket number assigned in the underlying criminal action, 3:07-CR-097-D (1).

year term of supervised release. (*See* doc. 21; *see also* doc. 36 (stating the reasons for the sentence that was imposed).) He did not appeal.

In his § 2255 motion, Movant argues that he is entitled to relief under *Johnson v. United States*, 135 S.Ct. 2551 (2015), and *Welch v. United States*, 136 S. Ct. 1257 (2016). (*See* 3:16-CV-1774-D, doc. 1 at 7.) He argues that voluntary manslaughter and aggravated assault with a deadly weapon no longer qualify as violent felonies after *Johnson* because these crimes are "not enumerated and lacks force as an element, because it's a species of injury causation." (*See id.*) Accordingly, he claims that he is entitled to re-sentencing without the § 924(e) enhancement.[2]

## II. ARMED CAREER CRIMINAL ACT

As the Supreme Court of the United States noted in *Johnson*,

> Federal law forbids certain people—such as convicted felons, persons committed to mental institutions, and drug users—to ship, possess, and receive firearms. § 922(g). In general, the law punishes violation of this ban by up to 10 years' imprisonment. § 924(a)(2). But if the violator has three or more earlier convictions for a "serious drug offense" or a "violent felony," [Section 924 of the Armed Career Criminal Act] increases his prison term to a minimum of 15 years and a maximum of life. § 924(e)(1); *Curtis Johnson v. United States*, 559 U.S. 133, 136, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010). The Act defines "violent felony" as:
>
>> any crime punishable by imprisonment for a term exceeding one year ... that—
>>
>> (i) has as an element the use, attempted use, or threatened use of physical

---

[2] Movant was released from federal prison and removed from the United States in November 2017. He remains on supervised release until October 2022. In the context of a habeas petition under 28 U.S.C. § 2241, the Fifth Circuit has held that habeas petitions that challenge only a prison term that the movant has already served are not moot. *See Johnson v. Pettiford*, 442 F.3d 917, 918 ("the possibility that the district court may alter [the petitioner's] period of supervised release pursuant to 18 U.S.C. § 3582(e)(2), if it determines that he has served excess prison time, prevents [his] petition from being moot."); *see also Amaya v. United States*, No. V-05-87, 2008 WL 416255, at * 1 (S.D. Tex. Feb. 13, 2008) (concluding that a § 2255 motion that challenged only the movant's completed prison sentence was not moot under the reasoning of *Pettiford*). Notably, federal circuit courts are split on this issue. *See Rhodes v. Judiscak*, 676 F.3d 931, 934 (10th Cir. 2012) (collecting cases). Under *Pettiford*, because the Court may determine that Movant has served excess prison time and could reduce his period of supervised release if he sought such relief under § 3582(e)(2), his § 2255 motion is not moot.

> force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*. § 924(e)(2)(B) (emphasis added).

135 S.Ct. at 2555-56. Subsection (i) is known either as the force clause, *United States v. Lerma*, 877 F.3d 628, 630 (5th Cir. 2017), or as the elements clause, *United States v. Taylor*, 873 F.3d 476, 477 n.1 (5th Cir. 2017). The four offenses listed in subsection (ii) are referred to as the "enumerated offenses," *see United States v. Davis*, 487 F.3d 282, 285 (5th Cir. 2007), or as the "enumerated offenses clause," *Taylor*, 873 F.3d at 477 n.1. The remainder of the subsection is known as the "residual clause," *Johnson,* 135 S.Ct. 2555-56.

*Johnson* held that the imposition of an increased sentenced under ACCA's residual clause violates the Constitution's guarantee of due process because the residual clause is unconstitutionally vague. *Johnson*, 135 S. Ct. at 2563.[3] After *Johnson*, a crime is a violent felony under ACCA only if it is one of the enumerated offenses, or if it qualifies under the force clause. *United States v. Moore*, 711 F. App'x at 759.

Here, the crime for which Movant was convicted, voluntary manslaughter, is not an enumerated offense. The United States Court of Appeals for the Fifth Circuit has held, moreover, that voluntary manslaughter does not have "as an element[] the use of force." *United States v. Shipman*, 531 F. App'x 497, 498 (5th Cir. 2013) (concluding that "the district court clearly erred in determining that [a] voluntary manslaughter conviction had, as an element, the use of force" because "[t]he threatened or attempted use of force does not appear anywhere in former Tex. Penal Code § 19.04(a)."). The Government, however, urges that *Shipman* has since been abrogated by the United

---

[3] This holding is retroactively available on collateral review. *Welch*, 136 S.Ct. at 1268.

3

States Supreme Court.

### III.  TEXAS VOLUNTARY MANSLAUGHTER STATUTE

Although Movant was convicted of voluntary manslaughter in 1998, he committed that crime in Texas on May 13, 1994.  (*See* doc. 37 at 5, ¶ 7.)  The version of Texas Penal Code § 19.04 in effect when Movant committed voluntary manslaughter provided:

> (a) A person commits an offense if he causes the death of an individual under circumstances that would constitute murder under Section 19.02 of this code, except that he caused the death under the immediate influence of sudden passion arising from an adequate cause.
>
> (b) "Sudden passion" means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.
>
> (c) "Adequate cause" means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.
>
> (d) An offense under this section is a felony of the second degree.

Tex. Penal Code § 19.04 (1974); *see* Act of June 14, 1973, 63rd Leg., R.S., ch. 399, § 1; *see also Moore v. State*, 969 S.W.2d 4, 8 n.1 (Tex. Crim. App. 1998) (en banc) (noting that, though § 19.04 was repealed effective September 1, 1994, § 19.04 "was continued for offenses committed before the effective date" of the repeal).  Because "[t]he elements of the offense of voluntary manslaughter are the same as those for murder, with the exception that a person charged with manslaughter must show that he acted in sudden rage," *Fuentes v. State*, 673 S.W.2d 207, 210 (Tex. App. 1984), the Court must also examine the Texas murder statute.

Texas Penal Code § 19.02(a), which defined murder and was in effect when Movant committed his crime, provided:

4

> (a) A person commits an offense if he:
>
>> (1) intentionally or knowingly causes the death of an individual;
>>
>> (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; or
>>
>> (3) commits or attempts to commit a felony, other than voluntary or involuntary manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

Tex. Penal Code § 19.02 (1974); *see* Act of June 14, 1973, 63rd Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 913.

**A.      Applicable Approach**

To determine whether a crime is a violent felony under the force clause, courts use either the categorical approach or the modified categorical approach, depending on whether the statute setting out the offense is indivisible or divisible. *See Lerma*, 877 F.3d at 631; *United States v. Howell*, 838 F.3d 489, 494-95 (5th Cir. 2016). An indivisible statute sets out "a single set of elements [defining]", or "various means of committing," a single crime or offense. *Lerma*, 877 F.3d at 631; *Howell*, 838 F.3d at 497. A divisible statute "lists multiple, alternative elements, and so effectively creates 'several different ... crimes.'" *Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013) (quoting *Nijhawan v. Holder,* 557 U.S. 29, 41 (2009)).

"Elements are the constituent parts of a crime's legal definition", i.e., what the prosecution must prove and the jury must find beyond a reasonable doubt to convict the defendant, or what the defendant must admit when he pleads guilty. *Mathis v. United States*, 136 S.Ct. 2243, 2248 (2016). "An element of a crime must be distinguished from the means of satisfying a single element." *Lerma*, 877 F.3d at 631. The test for determining whether a statute alternatively sets out elements

5

or means of satisfying an element is whether a jury must agree on one of the statutory alternatives in reaching a verdict. *Howell*, 838 F.3d at 497.

> Elements must be agreed upon by a jury. When a jury is not required to agree on the way that a particular requirement of an offense is met, the way of satisfying that requirement is a means of committing an offense not an element of the offense.

*Id.* at 498 (quoting *United States v. Hinkle*, 832 F.3d 569, 574-75 (5th Cir. 2016)).

If a statute is indivisible because it sets out a single set of elements, the sentencing court must apply the "categorical approach." *Mathis,* 136 S.Ct. at 2248. It "requires the sentencing court, when determining whether a crime qualifies as a violent felony under the elements [or force] clause, to focus solely on whether the elements of the crime of conviction include the use, attempted use, or threatened use of physical force against the person of another." *Lerma*, 877 F.3d at 630. "The sentencing court is not permitted to review the particular facts of the case." *Id.*

If a statute is divisible because it lists alternative elements, the sentencing court must use the "modified categorical approach" to determine the elements under which the defendant was convicted. *Mathis*, 136 S.Ct. at 2253. Under this approach, the court looks "to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of [committing]." *Id*. at 2249 (citations omitted). "The court can then determine, in deciding whether the crime satisfies the elements [or force] clause, if one of those elements included the use, attempted use, or threatened use of physical force against the person of another." *Lerma*, 877 F.3d at 630.

To determine whether a statute is divisible or indivisible, courts may consider several sources, including the statutory text and state court decisions. *United States v. Reyes-Contreras*, 882 F.3d 113, 119 (5th Cir. 2018). The Texas Court of Criminal Appeals has held that the text of the

6

current Texas murder statute contains three subsections setting out alternative means of committing the same offense.[4] *See Ex parte Rogers*, 2017 WL 5476353 at *1 (Tex. Crim. App. Nov. 15, 2017) (murder under § 19.02(b)(1) and § 19.02(b)(2) are alternate means of committing murder); *Young v. State*, 341 S.W.3d 417, 423 (Tex. Crim. App. 2011) (noting murder is a "result of conduct" offense "because it punishes the intentional killing of someone regardless of the specific manner ... of causing the person's death"); *Aguirre v. State*, 732 S.W.2d 320, 325–26 (Tex. Crim. App. 1982) (opinion on rehearing) (holding when indictment contained two paragraphs, the first alleging murder under § 19.02(b)(1) and the second alleging murder under § 19.02(b)(3), the allegations were merely two different manners and means of committing same offense). A jury is not required to reach unanimous agreement about which subsection of the murder statute a defendant violated, because the three methods of committing murder set forth in the statute are different manners and means of committing the same offense, not distinct and separate offenses. *Smith v. State*, 436 S.W.3d 353, 378 (Tex. App. – Houston [14th Dist.] 2014).

Because the three subsections of the Texas murder statute set out three alternative means of committing murder by causing the death of an individual, and a jury is not required to agree by which of the three means a defendant committed murder, the statute is indivisible. *See Lerma*, 877 F.3d at 631; *Howell*, 838 F.3d at 497. Moreover, because "[t]he elements of the offense of voluntary manslaughter are the same as those for murder, with the exception that a person charged with manslaughter must show that he acted in sudden rage," *Fuentes v. State*, 673 S.W.2d at 210, the applicable approach for determining whether the offense of voluntary manslaughter qualifies as a

---

[4] The only difference between the current version of the murder statute and the one under which Movant was convicted is that the current version refers to "manslaughter," rather than "voluntary or involuntary manslaughter," in the subsection that describes murder in the course of committing a felony.

7

violent felony under ACCA's force clause is the "categorical approach." *See Mathis,* 136 S.Ct. at 2248. The Court must therefore "focus solely on whether the elements of the crime of conviction include the use, attempted use, or threatened use of physical force against the person of another." *See Lerma*, 877 F.3d at 630.

**B.    Use of Physical Force**

"The phrase 'physical force' [in § 924(e)(2)(B)(i)] means violent force—that is, force capable of causing physical pain or injury to another person." *See Johnson v. United States*, 559 U.S. 133, 140 (2010). Neither the Fifth Circuit nor any district court within it appears to have considered whether Texas murder (which makes it a crime to cause the death of an individual) includes the use of physical force as an element for purposes of determining whether it qualifies a violent felony under ACCA's force clause.[5]   As discussed above, however, the Fifth Circuit has concluded that voluntary manslaughter does not have "as an element[] the use of force." *Shipman*, 531 F. App'x at 498.

Moreover, the Fifth Circuit has considered whether assault (which makes it a crime to cause bodily injury) includes the use of physical force as an element for purposes of deciding whether it qualifies as a "crime of violence" under the force clause in 18 U.S.C. § 16(a), which is almost

---

[5] Two district courts have held that attempted murder under Texas law is a violent felony under ACCA. *See Joiner v. United States*, No. A-12-CR-0014-SS, A-16-CV-01069-SS, 2018 WL 814021 at *4-5 (W.D. Tex. Feb. 9, 2018) (finding that under either the categorical or modified categorical approaches, attempted murder by shooting a gun is a violent felony for purposes of ACCA); *United States v. Gonzales*, No. 2:11-CR-801 (2:14-CV-388), 2017 WL 978700 at (S.D. Tex. Mar. 13, 2017) (finding that attempted murders by stabbing with a knife, a deadly weapon, and by shooting were violent felonies under ACCA because courts in other jurisdictions had concluded that other states' attempted murder convictions were proper predicate offenses under its force clause). Neither case analyzed the statutory elements of the offense as required under the categorical approach, however. *See Lerma*, 877 F.3d at 630.

identical to the one in ACCA.[6] *See United States v. Villegas–Hernandez*, 468 F.3d 874 (5th Cir. 2006). Its analysis in that case is therefore instructive.[7]

### 1. *Villegas-Hernandez and Progeny*

In *Villegas–Hernandez,* the Fifth Circuit began its analysis of the Texas assault statute under the categorical approach by first explaining that "the term 'force' has a specific meaning and, 'when used in the statutory definition of a 'crime of violence,' is 'synonymous with destructive or violent force.'" *Id.* at 878-79 (quoting *United States v. Landeros–Gonzales*, 262 F.3d 424, 426 (5th Cir. 2001)). Because use of force must be "an element" of the offense, assault would satisfy the definition of "crime of violence" in § 16(a) "only if a conviction for that offense could not be sustained without proof of the use of 'destructive or violent' force." *Id.* at 879. The court noted that the "bodily injury" required by the assault statute "could result from any of a number of acts, without use of 'destructive or violent force', [such as] making available to the victim a poisoned drink while reassuring him the drink is safe, or telling the victim he can safely back his car out while knowing an approaching car driven by an independently acting third party will hit the victim." *Id*. Because the prosecution would not need to show use of physical force to convict under these scenarios, the Fifth Circuit concluded that use of force was not a element of the offense, so assault did not qualify as a "crime of violence" under § 16(a). *Id.* In so finding, the Fifth Circuit recalled

---

[6] Section 16(a) defines a "crime of violence" as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person *or property* of another." 18 U.S.C. § 16(a) (2000) (*emphasis added*). ACCA refers only to the use of physical force against the person of another.

[7] Courts analyzing issues arising under the force clause of either § 16(a) or ACCA rely on cases under both statutes, as well as on identically worded sentencing guidelines regarding crimes of violence. *See Johnson v. United States*, 559 U.S. 133, 140 (2010) (relying on case law under § 16 in an analysis of the elements of a crime under the force clause of § 924(e); *United States v. Paniagua*, 481 F. App'x 162, 166 (5th Cir. 2012) (relying on case law under § 924(e) in an analysis of the elements of a crime under the force clause of § 16); *United States v. Johnson*, 880 F.3d 226, 234 (5th Cir. 2018) ("precedent regarding ACCA's definition of a violent felony is directly applicable to the Guidelines definition of a crime of violence").

its prior *en banc* holdings in *United States v. Vargas-Duran*, 356 F.3d 598, 606 (5th Cir. 2004) (*en banc*), that "'[t]here is ... a difference between a defendant's causation of injury and the ... use of [physical] force,'" and that "'the intentional causation of injury does not necessarily involve the use of force.'" *Id*. at 880-81.

The Fifth Circuit subsequently considered whether a California terroristic threat statute had as an element the threatened use of physical force and was therefore a "crime of violence" for purposes of § 2L1.2 of the Sentencing Guidelines, which is in relevant part identical to ACCA's force clause. *See United States v. De La Rosa–Hernandez*, 264 F. App'x 446, 447-49 (5th Cir. 2008). Citing *Villegas–Hernandez,* it began its analysis by reiterating that its "rule is clear: if the defendant may be found guilty of an offense under a set of a facts not involving the actual, attempted use of physical force against another, the offense is *not* a [crime of violence]." *Id.* at 448-49 (*emphasis original*). Applying the categorical approach, the court found that "[a]s in *Villegas*, a defendant could violate [the California statute, which criminalized threatening to commit a crime that would result in death or great bodily injury to another person], by threatening either to poison another or to guide someone intentionally into dangerous traffic, neither of which involve 'force', as that term is defined by our court." *Id*. at 449. Because it was possible to obtain a conviction under the statute without proof of the threatened use of physical force, the Fifth Circuit found that it was not an element of the offense, so it was not a crime of violence. *Id*.

More recently, in *United States v. Rico-Mejia*, 859 F.3d 318, 321 (5th Cir. 2017), the Fifth Circuit again considered whether a "terroristic threatening" statute had the threatened use of physical force as an element and was a crime of violence under § 2L1.2. The court found that even if the district court correctly resorted to the modified categorical approach in analyzing the Arkansas

10

"terroristic threatening" statute, which made it an offense to threaten to cause death or serious bodily injury to another person, the offense could not constitute a crime of violence under *Villegas–Hernandez* and *De La Rosa–Hernandez* because a person could cause physical injury without using physical force. *Id.* at 322-23.

### 2. *Castleman*

The Government argues that the Supreme Court's decision in *United States v. Castleman*, 134 S.Ct. 1405 (2014), undermined *Villegas-Hernandez* and the other Fifth Circuit cases that held that a statutory element of causing injury or threatening to cause the death of a person does not necessarily include the use or threatened use of physical force. (*See* 3:16-CV-1774-D, doc. 7 at 10-13.) This argument has recently been expressly rejected by the Fifth Circuit, however:

> The Government responds that [*Villegas-Hernandez* and its progeny] have been overruled by *United States v. Castleman*, ___ U.S. ___, 134 S.Ct. 1405, 1414, 188 L.Ed.2d 426 (2014), which held that a defendant's guilty plea to having "intentionally or knowingly cause[d] bodily injury" to the mother of his child constituted "the use of physical force" required for a misdemeanor crime of domestic violence as defined in 18 U.S.C. § 921(a)(33)(A). The Government points out that as part of the Supreme Court's reasoning in that decision, it applied a definition of "use of physical force" that was much broader than that described in the above cases – one that could involve harm caused both directly and indirectly and that would include administering poison or similar actions. *Id*. at 1413–15. ...
>
> The Government's contention regarding *Castleman* must be rejected. By its express terms, *Castleman*'s analysis is not applicable to the physical force requirement for a crime of violence, which "suggests a category of violent, active crimes" that have as an element a heightened form of physical force that is narrower in scope than that applicable in the domestic violence context. 134 S.Ct. at 1411 n.4 (noting that "Courts of Appeals have generally held that mere offensive touching cannot constitute the 'physical force' necessary to a 'crime of violence' " and clarifying that "[n]othing in today's opinion casts doubt on these holdings, because ... 'domestic violence' encompasses a range of force broader than that which constitutes 'violence' simpliciter"). Accordingly, *Castleman* does not disturb this court's precedent regarding the characterization of crimes of violence, and [the Arkansas terroristic threat statute] cannot constitute a crime of violence ... because it lacks physical force as an element.

*Rico-Mejia*, 859 F.3d at 322-23.

Subsequently, in *United States v. Burris*, ___ F.3d ___, ___, 2018 WL 3015050 (5th Cir. 2018), the Fifth Circuit again rejected the Government's argument that *Castleman* abrogated its rule that "'a person could cause physical injury without using physical force.'" *Id.* at *6 (quoting *Rico-Mejia*, 859 F.3d at 321). The Court in *Burris* noted that two recent published decisions – *Rico-Mejia* and *United States v. Reyes-Contreras*, 882 F.3d 113 (5th Cir. 2018), *reh'g en banc granted*, 2018 WL 3014176 – dictated the conclusions that *Castleman* was limited to the context of a "misdemeanor crime of domestic violence" and that "*Castleman* does not abrogate our decisions on the use of force.'" *Burris*, 2018 WL 3015050, at *6 (quoting *Reyes-Contreras*, 882 F.3d at 123). This court is likewise bound by *Rico-Mejia*'s rejection of the Government's reliance on *Castleman*.

### 3. *Howell*

The Government also argues that in *United States v. Howell*, 838 F.3d 489 (5th Cir. 2016), the Fifth Circuit held that causation of bodily injury requires the use of force, so causation of death also requires the use of force, since death is a higher level of bodily injury. (*See* 3:16-CV-1774-D, doc. 7 at 13-14.) The Texas statute at issue in *Howell* was assault by causing bodily injury to a family member by "impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth." *Id*. at 490-91. Holding that the offense was a crime of violence under the force clause, the court explained:

> It is difficult to conceive of how applying pressure to either a person's throat or neck in a manner that resulted in "impeding the normal breathing or circulation" could not involve the use of physical force. The same is true of blocking a person's nose or mouth resulting in "impeding the normal breathing or circulation of the blood of the person." ... The operative language in the statute is "by applying pressure to the person's throat" or "by blocking the person's nose or mouth," indicating affirmative

action on the part of the defendant that is more direct [than the hypotheticals argued by Howell].

*Id*. at 502.

In addition to the element of causing bodily injury, the assault statute in *Howell* had as an element the use of physical force by either impeding breathing or circulation of the blood by applying pressure to the throat or by blocking the nose or mouth.[8] By contrast, the statutes at issue in *Villegas-Hernandez* and *De La Rosa-Hernandez* only had as an element the causing of bodily injury or the threat to cause death; they did not have any additional element regarding the use or threatened use of physical force. *Howell* is therefore distinguishable.

In conclusion, the Court finds that the Fifth Circuit's rationale in *Villegas-Hernandez* for finding that a person can cause bodily injury without the use of physical force, which was reaffirmed in *De La Rosa–Hernandez* and *Rico-Mejia*, applies equally to the determination of whether a person may cause the death of another under the Texas murder statute—and so its voluntary manslaughter statute—without the use of physical force. In those cases, the court repeatedly noted that there are any number of actions, including poisoning and deception, that do not require the use of destructive or violent force in order to cause bodily injury, or to threaten to commit a crime that would result in death or great bodily injury to another person. These same types of actions could also cause the

---

[8] The Fifth Circuit later relied on *Howell* in considering whether a Minnesota unintentional murder statute was a crime of violence for purposes of § 2L1.2. *See United States v. Herrera-Serrano*, 703 F. App'x 342 (5th Cir. 2017). Under the statute, a person commits an offense if he "causes the death of a human being, without intent to effect the death of any person, while committing a felony offense ... with force or violence or a drive-by shooting." *Id*. at 344. The court noted that Minnesota required the jury to be instructed as to the elements of the underlying felony, and that an element of the underlying felony in that case, assault, was the infliction of "great bodily harm." *Id*. at 344-45. Applying the modified categorical approach, the Fifth Circuit held that the Minnesota offense was a crime of violence because it had as an element the use of physical force. *Id*. It specifically noted its holding in *Howell* "that intentional, knowing, or reckless causing of bodily injury to another (the Texas offense of domestic abuse by impeding breathing or circulation) has as an element the use of force." *Id*. As in *Howell*, the statute in *Herrera-Serrano* had as an element the use of physical force in addition to the element of injury causation.

13

death of a person. Based on *Villegas–Hernandez* and its progeny, a district court has concluded that Texas murder is no longer a violent felony after *Johnson* because it does not qualify under the force clause. *See Vickers v. United States*, 3:15-CV-3912-B-BH, 2018 WL 2725285, at *2 (N.D. Tex. June 5, 2018). Because there is a set of facts that would support a conviction for Texas murder without proof of the use of force, and the use of force is not a fact necessary to support a conviction under that statute, the use of force is not an element of Texas murder or, in turn, Texas voluntary manslaughter. Applying the Fifth Circuit's clear rule in *Villegas–Hernandez* to the Texas voluntary manslaughter statute, the Court finds that the offense is not a violent felony under ACCA's force clause.[9]

Movant's sentence was enhanced under ACCA, in part, based on the voluntary manslaughter offense. Because voluntary manslaughter is no longer a violent felony after *Johnson*, the enhancement under the ACCA and increase in Movant's offense level as an armed career criminal does not survive.[10]

---

[9] Even if the modified categorical approach was used, the result would be the same. As discussed, under this approach, courts look to documents such the indictment, jury instructions, or plea agreement, to determine the offense and elements of conviction. *Mathis*, 136 S.Ct. at 2249. Once the statutory elements are determined by resorting to court documents, it is those elements, rather than the underlying conduct, that are used to determine whether the offense is a violent felony under the elements clause. *See United States v. Godoy-Castaneda*, 614 F. App'x 768, 770 (5th Cir. 2015). The Texas Court of Criminal Appeals has explained that the allegation of the "manner and means [of causing death] is a description of how the offense was committed," and it includes the defendant's actions and the instrument of death. *Sanchez v. State*, 376 S.W.3d 767, 773 (Tex. Crim. App. 2012). The jury does not need to unanimously agree on the manner and means of causing death, only that the defendant caused the death. *See id.* at 773-74 (jury not required to unanimously agree on whether the defendant cause the death by one of several possible ways of asphyxiating the deceased). Because jury unanimity is not required for the manner and means of causing the death of an individual, the manner and means in Movant's case are not elements of the offense. *See Howell*, 838 F.3d at 497. The relevant element of murder under the modified categorical approach is causing the death of an individual. As discussed, the element of causing the death of an individual does not make murder a violent felony under the force clause.

[10] Because Movant's conviction for voluntary manslaughter no longer supports his enhanced sentence as an armed career criminal, it is unnecessary to consider whether aggravated assault with a deadly weapon is a violent felony. *But see United States v. Moore*, 711 F. App'x 757, 761 (5th Cir. 2017) (per curiam) (holding that Texas aggravated assault with a deadly weapon is still a violent felony after *Johnson* because it has as an element the use, attempted use, or threatened use of physical force).

## V. RECOMMENDATION

The motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 should be **GRANTED**, the sentence should be vacated, and Movant should be re-sentenced.

**SIGNED** this 18th day of June, 2018.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE